**Dated: April 30, 2007**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**IONA KAY MASTERSON and**                Case No. 05-73949
**PAUL NATHAN LINNEY, JR.**               Chapter 7

       Debtors,

**IONA KAY MASTERSON**

       Plaintiff**,**

vs.                                       Adv. Nos. 06-8152 & 06-8153

**OKLAHOMA STATE REGENTS**
**FOR HIGHER EDUCATION**

       Defendant.

**O R D E R**

On the 2nd day of April, 2007, the above-referenced adversary proceedings came on for trial. Appearances were entered by James Conrady, Attorney for Plaintiff, and David Harting, Attorney for Defendant. After hearing and reviewing the evidence and testimony presented by the parties,

EOD: 5/1/07 by msp

this Court does hereby enter its findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Iona Masterson and Paul Linney, Jr. filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on September 14, 2005. Plaintiff commenced these adversary proceedings to determine the dischargeability of her student loans pursuant to 11 U.S.C. § 523(a)(8). The original defendant in adversary proceeding 06-8152 was Nelnet; Oklahoma State Regents for Higher Education ("OSRHE") was substituted as the Defendant in an Order entered October 12, 2006. The original defendants in adversary proceeding 06-8153 were Sallie Mae and Sallie Mae Servicing, L.P.; OSRHE was substituted as the Defendant in an Order entered on November 9, 2006.

Mr. Linney also commenced two adversary proceedings to determine the dischargeability of his student loans. *See Linney v. Okla. State Regents for Higher Educ.,* Adv. No. 06-8154 (Bankr. E.D. Okla.); *Linney v. U. S. Dep't of Educ.,* Adv. No. 06-8155 (Bankr. E.D. Okla.). The four adversaries were consolidated for purposes of trial, and a joint Pre-Trial Order was entered April 2, 2007, in adversary proceeding 06-8152.

Plaintiff and her husband reside in Tahlequah, Oklahoma. Debtors both have two children from previous relationships, and have one child together. The children range in age from 2 years to eleven, and Debtors have full custody of all five children. Mr. Linney receives $231.90 per month in child support from his ex-wife. Plaintiff receives no child support payments, and is not pursuing child support. Plaintiff is 30 years old and is in good health.

Mr. Linney is employed by Cingular Wireless, now owned by AT&T, in Catoosa, Oklahoma, as a customer service representative. Mr. Linney's daily commute is just over 120 miles. His net pay is $797.57 every two weeks. Part of Mr. Linney's income is deposited into a 401K retirement

account. Debtors also have health insurance coverage through Mr. Linney's employment. Mr. Linney anticipates an increase in pay, but he expects to reach the maximum pay level of $13.50 per hour within one to two years. Debtors also receive $362 each month under the Food Stamp Program.

Debtors own a home through the Cherokee Nation Housing Authority. Their monthly mortgage payment is $198. Debtors' estimated monthly expenses include $180 for electricity and heating, $35 for water, $131 for telephone, cell phone and internet, $90 for cable television, $16 for trash, $200 for food (in addition to the Food Stamp Program), $90 for home maintenance, $75 for laundry and dry cleaning, $50 for medical expenses, $360 for transportation expenses, $150 for recreation/entertainment expenses, $35 for house insurance, $74 for automobile insurance, $120 for automobile maintenance, $167 car payment and $140 for diapers. The list of income and expenses shows a shortfall each month of $333.96.

Both Debtors testified at trial as to the health of their youngest child. The child suffers from acute ear infections and a heart condition. Plaintiff stated that they are currently monitoring the child's condition, and there is hope that it will "heal itself".

As of April 4, 2007, the unpaid balance of Plaintiff's student loans was $52,007.54. No payments have been made and no payments are required because Plaintiff has been and continues to be at least a half-time student at Northeastern State University ("NSU") in Tahlequah, Oklahoma. Plaintiff is currently paying tuition expenses with funds she receives from grants. Plaintiff will graduate with a Bachelors Degree in paralegal studies in December, 2007. Plaintiff's student loans are not scheduled to become due until six months following her graduation from NSU.

Plaintiff has not worked outside the home since April of 2006. Plaintiff previously worked

3

as a paralegal and has also held jobs in the administrative field. Plaintiff testified that she has no current plans of retaining outside employment following her graduation, due to childcare costs. Plaintiff also noted that she has excessively missed work in the past due to the youngest child's health.

Plaintiff can consolidate her student loans under the William D. Ford Direct Loan Program ("Ford Program"). Under the Ford Program, Plaintiff's potential payments, based on Debtors' adjusted gross income for 2006, would be (1) $606.10 per month for ten years under the standard repayment plan; (2) $372.32 per month for 25 years under the extended repayment plan; (3) $310.45 per month for 25 years under the graduated repayment plan; or (4) $31.35 per month for 25 years under the income contingent repayment plan. Under the Ford Program, Plaintiff would also become eligible for the full range of deferments and forbearance in repayment that can extend up to three years. Since the Debtors' income is currently less than the Debtors' income in 2006, the monthly payment under the income contingent repayment plan would be closer to zero.

Since starting college in 1998, Plaintiff has received $18,145.00 in Pell grants to attend school. Brandi Casteel, a bankruptcy specialist at Oklahoma Guaranteed Student Loan Program, testified at trial that the estimated cost of tuition for a four-year degree at NSU during the years Plaintiff has attended is $11,000.00. This amount is far less than the total amount Plaintiff has received in grants and student loans. Furthermore, from 1998 to 2002 Plaintiff lived with her parents while she was attending school. She continued to take out student loans at that time, despite not having rent or utility expenses.

Debtors scheduled no priority unsecured claims and no secured claims. The scheduled unsecured non-priority claims total $120,017.06 and consist of primarily credit card debt, medical

bills and student loan debt.

Section 523(a)(8) excepts from discharge any debt "for an educational ... loan made, insured, or guaranteed by a governmental unit ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). "In enacting § 523(a)(8), Congress was primarily concerned about abusive student debtors and protecting the solvency of student loan programs." *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys),* 356 F.3d 1302, 1306 (10th Cir. 2004).

"Undue hardship" is not defined in the Bankruptcy Code. In *Polleys*, the Court of Appeals for the Tenth Circuit adopted a three-part test established by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2d Cir. 1987) for determining undue hardship. *Polleys,* 356 F.2d at 1309. *See also, Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete),* 412 F.2d 1200, 1204 (10th Cir. 2005). The *Brunner* test requires the debtor to prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396, *quoted in Polleys,* 356 F.3d at 1307. If the debtor fails to prove any one of the three parts of this test, the student loan debt is nondischargeable under § 523(a)(8). *Polleys,* 356 F.3d at 1307.

The Tenth Circuit Court of Appeals noted, however, that an "overly restrictive interpretation of the *Brunner* test fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the

5

honest but unfortunate debtor..." *Id.* at 1308. The Circuit Court, therefore, went on to state that in order to advance this "fresh start" policy, and to give judges discretion to weigh all the relevant factors, "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Id.* at 1309.

Under the first prong of the *Brunner* test, factors that should be examined include the debtor's income, expenses, health of the debtor and any dependents and the debtor's education and skill level. *Id.* The second prong requires a bankruptcy court to analyze the facts and circumstances affecting the debtor's future financial picture and the third prong includes an examination of whether the debtor has made a good faith effort to repay the student loans by maximizing income and minimizing expenses. *Id.* "Additionally ... the good faith portion of the *Brunner* test should consider whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship." *Id.*

In examining the factors relevant to the first prong, this Court cannot find that Plaintiff is unable to maintain a minimal standard of living for herself and her dependents if forced to repay the loans. Plaintiff and her husband are young and in good health. Their youngest child has an unspecified heart condition, however there is no evidence that the Debtors are currently incurring substantial expenses related to the condition, or that they will incur expenses in the near future. Furthermore, the family is covered under Mr. Linney's health insurance benefits through Cingular Wireless.

If Debtors were required to repay the student loans, including Mr. Linney's student loans, the monthly payment would be zero or near zero. Such a low payment (or no payment) would not cause the family to live below a minimal standard of living.

The second part of the *Brunner* test requires the debtor to show that additional circumstances exist that indicate the state of affairs is likely to persist for a significant portion of the repayment period. "[I]n applying this prong, courts need not require a 'certainty of hopelessness.' Instead, a realistic look must be made into the debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like." *Polleys,* 356 F.3d at 1310. Courts should base their determination under this prong on "specific articulable facts, not unfounded optimism." *Id.*

Plaintiff and her husband are providing adequate shelter, nutrition and health care to their family. Plaintiff will receive her degree in December, and despite her testimony regarding future income, this Court believes that a Bachelors Degree will increase her future earning capacity. Plaintiff has no disabilities or chronic health conditions that affect her future earning capacity. The health of the youngest child is currently being monitored, and there is hope that it will "heal itself". There was no evidence at trial that the child's condition will be long-term. And while Mr. Linney testified that his income will max out at Cingular Wireless, it is possible that he can find employment elsewhere with a higher earning potential. Plaintiff failed to show additional circumstances exist that indicate the present state of affairs is likely to persist.

The good faith requirement of the third prong can be satisfied by a showing that Plaintiff is "actively minimizing current household living expenses and maximizing personal and professional resources." Polleys, 356 F.3d at 1312.

In examining Plaintiff's expenses, it appears that the Plaintiff and her family are not living without basic necessities. The family resides in a home with cable television, internet access, and the 11-year-old child has a cellular telephone. Plaintiff also listed a monthly expense of $150 for recreation and entertainment expenses. It appears that the Debtors are not doing everything in their

7

power to minimize expenses.

This Court is particularly troubled by the fact that Plaintiff is attempting to discharge her student loans while still in school.  Plaintiff's payments would not become due until the middle of 2008.  This Court cannot find that the Plaintiff has made a good faith effort to repay even a small portion of her student loans.  Plaintiff is still a student.  *See, e.g., Lavoie v. U.S. Dep't of Educ. (In re Lavoie),* 292 B.R. 504 (Bankr. W.D. N.Y. 2003).

For the forgoing reasons, this Court declines to discharge Plaintiff's student loan obligations to Defendant.

IT IS THEREFORE ORDERED that Plaintiff's student loan debt is **nondischargeable.**

###